The next case for argument is 16-259A, Pentair Water Pool and Spa v. Hayward. As you'll have seen from our briefs, there's a first issue. It's one of claim construction. It's dealt with in detail in the briefs, but we'd like to try to simplify it. The only issue is with respect to the meaning of the phrase at the beginning of Claim 1 that says, determining a power factor based on the voltage and current. Do you agree that it has, determining a power factor can have two meanings? Yes, Your Honor. There's no disputes to that. Then how can it be that the board erred when they applied the broadest reasonable construction? Because there is no, you know, the two meanings that this can have. One means to figure out something you don't know, the other to fix it at a value you do know. There's no common concept between the two of those. You can't have a generic, if you could describe a concept that covered them both and say that's what determining means in the broadest reasonable interpretation. Wouldn't it be the broadest reasonable interpretation would be it's either this or that, either one of which would invalidate or infringe? But it's not, it is either this or that. It can't be both. And we explain this in our... I wasn't figuring out the form of fixing the value you do know, arriving at. Well, it's... You're thinking of figure out as something you have to go through a mental exercise in order to get there as opposed to just sort of picking it out. If you are fixing it at a value you know. I walk down the grocery store and there are two kinds of cereal and I figure out which one, I just take one. But that's if you are going to figure out, for example, in the claim, the second instance of the word determining is to determine whether. Clearly you're going to figure out an answer. You're going to determine whether something is the case and determine if something is the case. But that's different than saying I'm going to determine the outcome. I could get into doublespeak here, that I'm going to fix the outcome, that I'm going to prearrange the outcome. Well, why is this so hard? As Judge Stoll was saying, if there are two potential ways you could construe it, certainly in one of the use you agree it's the figure out use. Why the board applying the broadest reasonable interpretation couldn't do exactly what it did here? Well, there are two reasons, Your Honor. One is that there is no broad interpretation that covers both. You can choose A or B, but there is no meaning that you can ascribe to the word determining that simultaneously encompasses both. And without that, you can't have a broadest reasonable interpretation. You have to have one interpretation of a word in a claim. You can choose a broad meaning that covers multiple sub-meanings, if you will, but if there is no way to describe determining to have a meaning that actually does simultaneously encompass both, then you're going to have to choose one or the other. So that's the first thing. Second thing is that there is no support in the specification for the second meaning, figuring out meaning, calculating a power factor, and then basing your determination. This broadest reasonable interpretation, the board made a mistake. The board shouldn't have been looking at it as a broadest reasonable interpretation issue. The law is pretty clear that if you use the same term in a patent, let alone in the same claim, to mean two different things, the rule is you don't do that. You have to, there is a presumption that the word has the same meaning throughout. That's Pitney Bowes, right? There is a presumption. There is a presumption. And that's not a matter of, that's not a canon of claim construction. That's a rule. It's presumed to have the same meaning. Okay? And unless in the specification and in an accompanying document you've made very clear, as a matter of public notice, that there are two meanings, right? Yes, Your Honor. And in this case, when it's 67 times, how many times in the patent is the one meaning chosen by the board reflected? Well, there are actually, there's a dispute, 65 to 67. There are a couple of instances where it's not used to mean figuring it out. But in most, it is. But, Your Honor, the meaning of What's your response to the argument? Well, even though it's maybe not a matter of broadest reasonable interpretation, the board got it right here. You didn't carry your burden to overcome the presumption. Your Honor, there's no, one way of overcoming the presumption is to show that there's no support in the specification for the second meaning. And there is no support in the specification for figuring out the power factor, calculating the power factor. Oh, you're saying the patent's invalid for lack of written description. No, we're not, Your Honor. There is support for the fixing of the power factor, which is But you're saying both meanings pertain. I'm sorry, Your Honor. You're saying both meanings pertain in the patents. I'm saying that the word determining is used in both ways. In two different ways, used both ways. And in one way it's used, there's no support in the WD-IV. Therefore, the patent's invalid. No, Your Honor, that's not, I'm sorry, I didn't mean to say that. The claim says if we take the first instance of determining to mean figuring out, the claim then says figuring out a power factor and then later relying on that figured out power factor in an obstruction detection. The specification doesn't do that. It doesn't read on the disclosed embodiment. There is no place in the specification where there is a power factor that is figured out and then subsequently is used in an obstruction detection. But would, at the time of the invention, one of Ordinary's Kelney Art would know how, just to be clear, I hear what you're saying, but I want to make sure I understand something that you're not saying. You're not saying that one of Ordinary's Kelney Art, at the time of the invention, would not be able to calculate the power factor once that one person knew the voltage and current, right? No, Your Honor, we're not arguing that somebody would have been able to do that. This isn't an enablement issue, it's a written description issue. There's no description in the specification of calculating the power factor and then subsequently relying on that calculated power factor in an obstruction detection. Does this discussion at all relate to what you say should have been brought as a cross-appeal? I mean, you're adversarial, aren't you sort of walking into his buzzsaw? No, Your Honor, we don't think so. His view is that the 747 application doesn't have any written description for the power factor as the trigger for the fault. Well, Your Honor, it does have a written description for support for a fixed power factor, for the power factor to be fixed and for the obstruction detection to be based on known fixed values. That's what we asserted. Not that known fixed value, two other known fixed values, current and, right? I'm sorry, say that again. I think there's no written description to support the power factor as the trigger for the fault condition. The trigger for the fault condition, actually in the disclosed embodiment, is measuring variations in current. But the thresholds that you've set for analyzing that. By amending the claim you threw in the power factor as a third thing for measuring the fault condition. Yes, Your Honor, and the point that we made below. And that's where the written description argument is in the red brief. And I thought you were telling me now in support of your claim construction argument there's no support in the written description.  No, that's not what I said, Your Honor. I said there's no support in the written description for relying on a power factor that you are calculating. There is support for reliance on a power factor that you have fixed, that you know is fixed, and the voltage is fixed, and therefore that allows you to... But your claim calls for calculating a power factor. No, it doesn't, Your Honor. That's our point. Our point is that that first use of the word determining doesn't mean calculating. It means fixing. And if you interpret the claim that way, so that it says fixing the power factor. In the first instance it says fixing the power factor based on the voltage and current because that's how the power factor correction circuit works. The board below agreed with that. And they said that there's written description support for the claims. And including the reliance on the power factor. And they also said that one of ordinary skill in the art could read the claim and understand from the specification that it encompasses the meaning that we have been proposing all along, which means that the first instance of determining is fixing. So there is support in the specification for fixing the power factor at known values and then subsequently relying on that fixation in your obstruction detection. There is no support in the specification for calculating the power factor and then relying on that fixation. You said you're fixing the power factor, you're not ever calculating the power factor. Where in the claim were you calculating the power factor? We're not in the claim, Your Honor. We're fixing the power factor based on... We're fixing it, we're regulating it, and then later we are relying on the fixed regulated values in our obstruction detection. That's the interpretation that we're proposing. And the board below found that there's written description support for that. What they didn't do is say that there's written description support for the alternative. They did point to the specification instances, but there are no instances... Unfortunately here, determining a power factor, that phrase in the claim, never occurs in the specification. The use of the word determining is entirely context-dependent. So in the absence of that same context, you can't decide from the way it's used in the specification that it should mean the same thing. Most of the places it's used in the specification needs to figure out that there is never a place in the specification where the phrase determining the power factor. So if somebody were to read this case, and the normal process would be they would go through and read the specification and then come to the claims. They would get to the claims and they would know what this patent does. They would know what the system does. And the only way that you can read determining is to fix. Because that's what the patent does, that's what the disclosed embodiment does. Your view is, if you go back to where I was on what the rules are in claim construction, you're saying that in this instance the patentee is using the word determining in two different ways inside the same claim and that the specification makes crystal clear of the distinction. We believe that it doesn't. You have to. I mean, on the law. Petney-Bowes is, you know, either a sword or a shield for you. Yes, you're right. There's no way, you have to read it the way that we are saying because it isn't supported the other way. If we conclude that the written description does not make crystal clear that there are these two meanings, then you lose. As a matter of claim construction. Only apart from the broadest reasonable interpretation. I mean, there's... Yes, you're right. It's not... You can only read this one way and cover what is in the description. But the rules, as I understood it out of Petney-Bowes, has been... Now, I'm not quite a patent lawyer, so I had to learn these things that say if you use the same word in the claim, it has the same meaning. It has only one meaning. It doesn't have two meanings. And if you want it to have two meanings, you've got to be very clear in respect about what those two meanings are. Those, to me, are the rules. But in this case, there is no dispute that there are two reasonable meanings. Oh, yes. Nobody's arguing about the fact that there are two. But the question is, if you read through the patent and you say, I know it means one of the two. I mean, that's where the reasoning is. Well, you know, determining means figuring out. And if you go to that data point and you agree with that, then you don't get the other meaning unless you have clearly established it in your spec. Well, in this case, since there are two meanings, you look to the spec to see what's done with the power factor. And you see that the only thing that's done with the power factor is it's fixed. It doesn't have to be calculated because we know what it is. Why is it used 67 times in the patent the other way? It's never used determining the power factor. It's determining other things. Well, that's the problem. You use the word throughout to have the same meaning. It is used many times throughout. And there are a couple of places where it's used. We would say it's to mean fixing, not figuring out. But it's never used... No one's challenged the patent as being indefinite, right? No, Your Honor. To throw it up and say how is an ordinary person or somebody reading the patent supposed to know that there are two meanings to this? There was no dispute really below that there were two meanings. And ours was adopted. There was no support for the other one that was ever pointed to. If this claim construction is adopted the way that we believe is the only way that it can be read on the disclosure, there is one whole set of rejections that just disappears because it's based on art that doesn't teach fixing the power factor. So if you require that in the claims, there really isn't any dispute. One whole set of rejections goes away. In the other set of rejections, we have a problem where there was a motivation alleged to combine power factor correction and obstruction detection. And it was for financial and energy incentives. First thing is that that motivation was one sentence, one phrase, and an expert declaration. And that is the entire body of evidence for the rationale for combining the art. The other thing is that even if you combine them, nobody ever took the claim and read it on the combined device or the modified device and said every limitation here is met. The board didn't understand you to be making that challenge. Your Honor, we did below say that the... Am I correct that the board understood that you weren't making that specific challenge, that all the limitations weren't there? Well, I don't believe the board ever said that, Your Honor. It's on page 13 of the appendix. It said other than arguing that Mueller fails to teach the specific recitation of the application of the method to a spot or pool of the patent or doesn't argue that specific limitations. Am I missing something? Of 5 to 36. I'm sorry? Of 5 to 36. The limitation that's missing is in claim one. And we argued that Mueller, one of the references, teaches a power-based obstruction detection. The other reference teaches power factor correction. And you can add the two of them together, but you still don't have anything that teaches reliance on the power factor correction in your obstruction detection. If you combine these references for the motivation that we did, then you're going to make the tweaks that end up relying on the power factor correction in your obstruction detection. But they weren't looking at that. Their only motivation was financial and energy incentives. You drop A into B, and then in their claim chart, they said that whatever claims obstruction the owner is apparently arguing. I apologize for interrupting you, but is claim 5 through 36 or any of those dependent on claim one? They are all dependent on claim one. Okay, so the fact that the heading says claims 5 through 36, I don't think that means that the patent office didn't understand the patent owner to. I don't think that undermines the position that the patent office didn't understand you to be arguing that there were specific limitations missing. Because all those claims should be read to include the limitations of claim one. Well, they should be. But if they are... Was the argument made below that there were limitations missing from claim one? The argument made below was that neither of these two references teaches reliance on our effect of correction and the obstruction detection. We made that argument repeatedly. We're way beyond the time, so we'll restore two minutes. Let's hear from the other side. Thank you. Good morning. Your Honors, if it would please the Court, I'm Steve Halpern. I'm here on behalf of Hayward Industries. I planned a few things to say, but maybe first I could address some of the things that just came up. Technically speaking, determining a power factor is part of the specification of the 600 patent because it's original claim language that was included on the filing day of the 600 patent. But it's not part of the parent because it wasn't there. Regarding the difference between determining and determining whether, they both mean figuring out. The word whether means your answer is boolean. You're looking for something that's true or false. You're still figuring something out. It's just black or white. Regarding whether or not we proved that all of the elements are there, which is something they didn't really raise until their reply brief at Section 32, we did that in our third-party comments. That's at APPX 10.4.10 to 10.4.20, which was incorporated by reference by the writing of the appeal notice at 11.7.02 to 11.7.04. They did consider all of the limitations. And regarding this idea that I've always said in like one sentence, of our expert in reliance on putting the references together, he's probably referring to Paragraph 64 of the Declaration of Professor Ahmadi. That's like a conclusion paragraph. It's like the tip of the iceberg. It's like the collection of everything that came before it in the Declaration. And the Declaration, at Paragraph 33 and 39, talks about the modularity of rectifier designs. If you have a system like in MOLAR where you have a rectifier, and foreign object obstruction detection, and there's another rectifier that's a better rectifier, a power factor correction rectifier, this is modular, you can put them together, and that's at APPX 10.4.3.4 to 3.5. Professor Ahmadi also talks at Paragraph 34, which is APPX 10.4.5.4, this idea that if your power factor is low, the utility is conceivable. To get the same power, you have to draw a lot more current, because in AC power, power factor times voltage times current is the power. So if you have a low number for the power factor, you have to draw a high number of the current to get the same amount of power. And that's discussed at Paragraph 34 of Ahmadi's Declaration at 10.4.5.4. Their own expert, Professor Collins, at Paragraph 90, APP 9701, said that power factor correction is highly desirable, and that when you have the highest power factor, which is 1, because power factor is between 0 and 1, it's called unity, but it's also called the perfect power factor. So this allegation that they merely relied on one sentence is just false. And the fact that there are incentives to save energy and save the money that comes with the energy is a totally proper rationale for combining references. It's also completely rational to combine references, because one reference is a screw, and you're going to put in a bolt in its place, and there's plenty on the record talking about the modularity of reference design. So what I would do is, there are a few things I was going to talk about. Run that modularity point through once more, please. Okay. In a system, think about... I'll tell you how it works. Okay. In a system that goes AC to DC, and then DC, and then DC to AC. So you have three segments, right? AC to DC, then DC, then DC to AC. It's like two nodes on that bridge right there, right? AC power from the grid comes, and then it turns into DC current. That's where all the magic and the intelligence happens. And then the DC gets turned back to AC and gets sent to the motor. The motor in this case is called the DC brushless motor, but that's a misnomer. It's an AC motor. All right? So that piece that you have at the front end is called the rectifier. The piece on the back end is called an inverter. In Danfoss, in the molar reference, you might see different names used, but that's because it came out of Europe, and they have different names for those parts there. Okay? The equation for power depends on where you are. If you're looking at a fluid system, you might define power by using variables like how fast is the water moving, what kind of water, what's moving. If you're looking at mechanical power, you might look at how fast is this thing spinning around. But when you're looking at electricity, the way you figure out power, well, it depends. Where are you in the circuit? If you're at a DC point in the circuit, it's voltage times current. If you're at an AC point in the circuit, the way you figure out the power factors, you do the voltage times the current times the power factor. The power factor is between 0 and 1, so you'll get a number that's lower. And this kind of gets to... This wasn't part of what I was going to talk about, because it's pretty detailed stuff, but their sole explanation for why they have priority, and it's their burden. This is their rebuttal to everything we've shown, is that by having the power factor correction, they've reduced a three-variable equation to a two-variable equation. Totally false! Because the equation would have been two variables anyway, because all of their decision-making is on the DC side of the circuit, where a power factor wouldn't even be something you look at when you're trying to calculate power. You know, and the modularity, I thought you were making that point as a second issue for the reason to combine the references. It is, and it's actually cited. That's what I don't understand about this. You said it's only volts. It's easier somehow. It's a lot of volts and nuts. It's totally within the design. What's modular? What is that? Modular, instead of using a rectifier that doesn't have power factor correction, which there's plenty of them, you can use a rectifier that does have power factor correction. And that's what we've been calling... So one of the reasons to combine would be because it's real easy to do it? Is that what you're trying to tell me? Well, I don't know if the right word is easy, but I know... How modular means, meaning that... It's pretty much, let's use this... This can connect up to this, simplifying by volts. Exactly. I mean, the rectifier is part of the power supply, which is also in paragraph 33 and 39 of the Declaration. When he talks about... Monty talks about, you can use this. And this is the thing. The board is citing paragraph 64 of the Monty Declaration. It talks about two things. It talks about the modularity of rectifier design, and it talks about the incentives of using a rectifier that has power factor correction. What about their expert? Didn't their expert testify that this would be costly? That there were cost considerations that might... Well, fair with a motivation that combines? I'm happy you asked that, because I need to clear that up. He might have, in evidence, that they petitioned five times to have entered, that was refused entry, that nevertheless is still in the Joint Appendix, and nevertheless they've cited to this court. Is that the page J9698? That is 11802 to 12048. Fuck. Four to six times, depending on how you count. They put in Wagner and Mahler, right? And... I'm sorry. They put in Clems 5 through 36. And we put in this explanation as to why it's just unpatentable. We show them the two references. They tried to get in a response after ACP, an expert declaration, and three more declarations of other folks as well. They call them the second declarations. It was denied entry. Four to six times, depending on how you count this, over and over and over again they tried to get it in. They included all that stuff they tried to get in as an appendix to one of the petitions to get it in. Okay? What they've done is they've included in this Joint Appendix that petition to get it in that was denied and included all of the evidence that was denied. So when people are reviewing these binders... You tell me that the evidence that I read, that what I read in the briefs, that there was one counter to combining, that is to say because it was costly and expensive, that that is not evidence... Rejected entry four to six times. 11802 to 12048. And includes 25 to 35 of their appeal briefs to the court. Wasn't that a... Did you complain specifically about that in your briefs? I don't recall in your brief you telling me that, as you're saying now, it's preposterous for them to contend... I can't remember if they... I don't think that we... But I also know that when I was looking at page 25 and 35 of their appeal brief to this court, they were actually citing to those papers, not in a procedural context, but in a substantive context. No, I said one of their arguments against combining is to say, well, sure, you've got some of this stuff about efficiencies. Well, we've got cost. We put that in an equation. Well, Your Honor, that's what all those papers say. But on page 25 and 35 of their brief, they're citing to those papers for construction of what determining means, and they say to this court that that's what the board said. So I'm bringing this up just so your... Why are you making a very serious charge? I'm not making a charge. I just want pages 11802 to 12048. I'm not implying this court would ever make a mistake, but I don't want somebody somewhere when they're reading those pages to inadvertently think that those pages were actually part of the record below. There are appendices to a petition to have those papers entered, a petition which was denied, along with four or six other petitions that were denied. I just want the decision to be based on... Well, Mr. Cushing will have an opportunity to respond to this in his trial. Sure. So turning to... Well, can you just finish that point, though? I mean, if we're just looking at... I know you cited other portions of the record, but we're just looking at what the board cited, which was paragraph 64 of the Amati Declaration. Yes. So they talk about one sentence. I guess the one sentence includes financial and energy incentives. Right. And they're using what you now say they shouldn't use, which is, well, there's costs on the other side of the equation. Why, with or without costs, is this sufficient? Well, with or without costs, I mean, MPAP 2143, post-KSR, talks about whether or not there are powerful incentives within the same field of endeavor for putting two references together. And when you have one reference, such as Mueller, that is teaching AC to DC to AC with a rectifier, and they've got the functionality on there, the foreign object obstruction functionality, and you've got Wagner, which has a power factor correction rectifier on a similar circuit topology for a variable-speed motor, and it's Franklin Electric's Pupil-to-Pump. You know, it's modular. You can use that rectifier for this rectifier, number one. And number two, there's this powerful design incentive to actually use it by virtue of the energy savings. You're going to draw less current from the grid to get the same amount of power. And that's, again, I've provided the citations earlier, discussed by their expert. It's also corroborated by the ex-parte file history, this idea of drawing more current if the power factor is low. What is the JA site for that? That is the app 19041 to 19042, which, to me, what happened in the file history at that moment is very powerful and further supports the conclusion that determining includes figuring out within its scope. On October 8, 2010, during the next-party prosecution, they were characterizing the claimed invention, the same claim that we have today, and they weren't... this wasn't metaphorical. They actually talked about the claimed invention. What they said here is, a particular motor might have low and variable power factor, and as a result, it might draw more current than a load with a higher power factor. If the low power factor is not considered, all conditions will be determined too often, resulting in the pump being shut down unnecessarily. This is what they said. This results in a significant difference between the claimed invention of determining the power factor of the pump motor versus the prior art teaching where the power factor is not considered. So considered, figured out, calculating, very clearly talking about a system here that considers power factor, and you know that that power factor might be low and variable. If you have a system with a power factor that's low and variable, you're talking about an example where you don't have power factor correction. The whole purpose of having power factor correction is to have this high number that's constant. They're basically characterizing the claimed invention as dealing with an example where you've got low and variable power factor and the power factor is going to be considered. Another support for this is how engineers are going to understand these claims. And Professor Imadi testified in paragraph 54, section 11. When he first read these claims, he thought that they covered a line system and that he still thinks that they do today when he signed his declaration. You know, you have current, you have voltage. You look at the space between on the oscilloscope, that's how you figure out your power factor. And you know what? If you want to know if there's an obstruction, what do you do? You look at those three values and you compare that against the threshold. This is a very, very natural alignment that engineers understand. This language just goes right with the claim when he's figuring out power factor. Not to mention, if you look at Melbourne, not in its capacity as prior art, this dispute whether it's prior art, but its capacity as a contemporaneous reference that's probative of the understandings of one of ordinary skill. And if you look at paragraph 27, the claim reads like a stencil on this paragraph of Melbourne. And determining the power factor is being used to figure out the power factor from the voltage and the current. My time is up. I know that he had a few extra minutes. Would it be... Is there an important thought that you want to conclude with? I'll just give the court an opportunity for any last question. Thank you. Mr. Halpern says we shouldn't pay any attention to the parts of your brief where you're talking about the motivation to combine the negative effect of increased costs and whatnot. You heard what he was saying we're talking about? He says that there's a big chunk of what's in the appendix we ought to ignore. There is a chunk in the appendix that is properly ignored. It was apparently included. I didn't even know it was there until just this moment. We already had that issue about the appendix and we were preparing it. Was the part of your expert's declaration that talked about increased costs, you know what I'm talking about? Yes, Your Honor. Is that in the record or not in the record? The increased cost is... I don't have... Bring the stack with me. There's a paragraph in your expert's declaration in which he talks about the fact that there would be increased costs if you were making this combination. If that is in the declaration that was not entered, then... I'm asking you. What? We have... You made an argument in your brief. In our briefs. Yes. And your brief depends upon that expert's statement being in the record. Our brief didn't depend on it. It didn't cite to it. Are you saying that your brief was solely based on attorney argument? No, that one argument about increased costs, yes, Your Honor. Is solely attorney argument? Well, it's common sense, Your Honor. Stick with us. We're trying to find out whether or not that particular... Read the statement. We have a declaration that's in the record. Can you give us a cite for that, just for clarity in the record so we know which part is not... Appendix 9698. 9698. That's where it starts, or is it just that page? That page. The last part of paragraph 80 of our expert's declaration that was entered says these PFC rectifiers add additional cost and complexity and are generally not needed to meet any utility standards regarding power factor correction, etc. And that was not admitted below. It's not part of the record. That is in the record. Okay. I'm sorry. Can you tell me what is not in the record? What is the declaration? The only thing that is cited to in our briefs from the thing that shouldn't be in the record, and I didn't actually realize it was there, is we cite to a dictionary definition that was submitted as an attachment to a response that wasn't entered. And it doesn't say anything about cost and complexity. Can you tell me what page in the record you're talking about? He referred to page 25 of our brief that looks at the dictionary definitions from Mary Webster, and it cites to a copy of that that was downloaded off the internet. And it was attached as an exhibit to a response that was filed and wasn't entered. And is that a page on that? I mean, I can look at page 25. But since you're looking at it right now. Which page do you want? The appendix? The appendix page. The appendix page is 11829. And then on page 89698, I've read that declaration of Mr. Collins. I understand that is talking about increased costs. But that's not talking. Am I correct in understanding that that paragraph there is not talking about the combination of the two particular references that the Board was considering? It's not. That combination was first proposed by the examiner and the ACP, and we were never permitted to respond to that. Okay, so this is just a general comment. There's nothing in the record where we actually respond specifically to Wagner-Muller. But for clarity purposes, just because I remain a little confused, can you by close of business tomorrow just provide us with two sentences, three sentences, identifying what is included in the appendix and should not be there? Yes, Your Honor. Just giving us the page sites of the appendix that are improperly there. Yes, Your Honor. Okay. Thank you. I think that's it. You have a final thought? Your Honor, the issue here really on the claims construction, it cannot be read both ways. You have to choose one. It can mean black or white, but unless you can think of a way to describe determining to mean the gray or the combination, it's got to mean one or the other. And we've got below a factual finding from the board that says that fixing, if you read it as fixing, that is supported in the specification. If you look at that for substantial evidence, then we have a finding from below that reading this as fixing is supported. There is nothing in the record below that says that figuring out is supported by the entire client. We'll give you reliance on that later. Okay. Thank you. Thank you, Your Honor. Your Honor, may I have the permission to take one moment to clarify the record and or maybe submit two or three sentences if you so desire. Thank you, Your Honor. I don't want to get engaged in a discussion. Are you talking about clarifying the record for purposes of what is included in the appendix and should not appropriately be there? Correct. Well, your friend is going to give us those appendix sites. Do you disagree with that? If you disagree with that, you've got 24 hours afterwards to come in with a contrary view. In other words, it's something that he didn't point out should not be there. We don't want to get into a debate over this. We just want the appendix sites. Okay. Thank you, Your Honor. All right. Thank you. We thank both sides and the case is submitted.